**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

| | |
|---|---|
| **In the Matter of:** | **Chapter 11** |
| **DOLPHIN SHORES INVESTMENTS, LLC** | **Case No.: 25-04467-5-DMW** |
| **Debtor** | |

### CHAPTER 11 PLAN OF REORGANIZATION OF DOLPHIN SHORES INVESTMENTS, LLC

Pursuant to the provisions of 11 U.S.C. § 1123, the Debtor hereby submits the following Plan of Reorganization (the "**Plan**"):

### I. SUMMARY OF PLAN

Dolphin Shores Investments, LLC (the "**Debtor**"), as debtor and debtor in possession, proposes this Chapter 11 Plan of Reorganization (as amended, modified, or supplemented, the "**Plan**") under section 1121 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Plan sets forth the classification and treatment of Claims and Interests and provides the means for implementation intended to maximize value for stakeholders and effect a reorganization through orderly disposition of assets and payment of Claims as provided herein.

The Plan contemplates a reorganization of the Debtor's obligations. In accordance with the Plan, the Debtor intends to satisfy certain creditor claims through monies derived from leasing Debtor's real property as well as the possible sale of that real property.

The Plan is based on the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize its debts as described herein.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment for each respective creditor provided below.

The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges Creditors and parties in interest to consult with bankruptcy counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in deciding on voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

## II. DEFINITIONS AND RULES OF CONSTRUCTION

**A. Defined Terms**. The following capitalized terms shall have the meanings set forth below. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Bankruptcy Code and Bankruptcy Rules.

1.      **"Administrative Claim"** shall mean: Any Claim for costs and expenses of administration of the Chapter 11 Case that is Allowed under Bankruptcy Code sections 503(b), 507(a)(2), or 507(b), including any actual and necessary costs and expenses of preserving the Estate, unpaid fees and expenses of Professionals, and any fees and charges assessed under 28 U.S.C. § 1930.

2.      **"Allowed"** shall mean: With respect to a Claim: (a) listed by the Debtor in the Schedules as liquidated and not disputed or contingent and for which no contrary Proof of Claim has been filed; (b) as to which a timely Proof of Claim has been filed and no objection has been filed within the applicable period fixed by the Bankruptcy Court; or (c) Allowed by a Final Order.

3.      **"Allowed Secured Claim"** shall mean: An Allowed Claim that is secured by a Lien on property in which the Estate has an interest, to the extent of the value of such Claim Holder's interest in such property, as determined pursuant to Bankruptcy Code section 506(a).

4.      **"Avoidance Actions"** shall mean: Any and all avoidance, recovery, subordination, or other actions or remedies that may be brought by or on behalf of the Debtor or the Estate under the Bankruptcy Code or applicable non-bankruptcy law, including actions arising under Bankruptcy Code sections 544, 545, 547, 548, 549, 550, and 553.

5.      **"Ballot"** shall mean: The ballot form distributed to each Holder of an Impaired Claim entitled to vote on the Plan, on which the Holder indicates acceptance or rejection of the Plan.

6.      **"Bankruptcy Code"** shall mean: Title 11 of the United States Code, as amended.

7.      **"Bankruptcy Court"** shall mean: The United States Bankruptcy Court for the Eastern District of North Carolina, or any other court having jurisdiction over the Chapter 11 Case.

8.      **"Bankruptcy Rules"** shall mean: The Federal Rules of Bankruptcy Procedure, as amended.

9.      **"Brunswick County Tax Office"** shall mean: The Brunswick County Tax Office located at 30 Government Center Drive NE, Sandifer Building, 1st Floor, Bolivia, NC 28422.

10. **"Builder's Capital"** shall mean: Builder's Capital, Holder of the first deed of trust on Phase 1, Phase 2, and the 2.00± acre tract of raw land.

11. **"Business Day"** shall mean: Any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006(a)).

12. **"Case"** shall mean: The bankruptcy case commenced by the Debtor under Chapter 11, styled 'In re Dolphin Shores Investments, LLC, Case No. 25-04467-5-DMW'.

13. **"Cash"** shall mean: Legal tender of the United States of America and equivalents thereof.

14. **"Causes of Action"** shall mean: Any and all claims, actions, causes of action, choses in action, suits, debts, accounts, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including Avoidance Actions and other actions against Insiders and/or other Entities) that the Debtor or the Estate may hold against any Entity, other than those released under the Plan.

15. **"Cheek Legal, PLLC"** shall mean: The Law Offices of Cheek Legal, PLLC, located at 310 Craven Street, Suite 12, New Bern, NC 28562.

16. **"Claim"** shall mean: A claim, as defined in Bankruptcy Code section 101(5), against the Debtor.

17. **"Class"** shall mean: A category of Holders of Claims or Interests classified together pursuant to Bankruptcy Code section 1122.

18. **"Confirmation Date"** shall mean: The date on which the Bankruptcy Court enters the Confirmation Order.

19. **"Confirmation Hearing"** me shall mean: The hearing at which the Bankruptcy Court considers confirmation of the Plan.

20. **"Confirmation Order"** shall mean: The order of the Bankruptcy Court confirming the Plan.

21. **"Construction Loan Services, II"** shall mean: The servicer for the Builder's Capital loan.

22. **"Creditor"** shall mean: A Holder of a Claim.

23.       **"Custom Home Furnishings, LLC"** shall mean: Custom Home Furnishings, LLC, located at 3514 South College Road, Wilmington, NC 28412.

24.       **"Debtor"** shall mean: Dolphin Shores Investments, LLC.

25.       **"Disclosure Statement"** shall mean: The disclosure statement relating to the Plan, as approved by the Bankruptcy Court and as amended, supplemented, or modified from time to time.

26.       **"Disputed Claim"** shall mean: A Claim that is not an Allowed Claim, including (a) listed on the Schedules as disputed, contingent, or unliquidated; (b) listed as undisputed, liquidated, and not contingent, but where a Proof of Claim is filed in an amount exceeding the scheduled amount (to the extent of such excess); or (c) not listed on the Schedules but for which a Proof of Claim is filed and is or may be objected to and has not been Allowed by Final Order.

27.       **"Distribution"** shall mean: Any distribution of property to a Holder of an Allowed Claim or Interest under the Plan.

28.       **"Effective Date"** shall mean: The first Business Day after the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions precedent to effectiveness have been satisfied or waived.

29.       **"Entity"** shall mean: Any person or legal entity, including an individual, corporation, partnership, limited liability company, association, joint venture, estate, trust, unincorporated organization, government or political subdivision, or other legal entity.

30.       **"Estate"** shall mean: The estate created for the Debtor in the Case pursuant to Bankruptcy Code section 541.

31.       **"Executory Contract"** shall mean: A contract to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

32.       **"FCI Lender Services, Inc."** shall mean: FCI Lender Services, Inc., the servicer for the Class 5 secured loans.

33.       **"Final Order"** shall mean: An order or judgment of the Bankruptcy Court that is final and non-appealable, or as to which any appeal has been finally resolved.

34.       **"General Unsecured Claim"** shall mean: Any Unsecured Claim that is not an Administrative Claim, Priority Tax Claim, or Secured Claim.

35.     **"Holder"** shall mean: The legal or beneficial owner of a Claim or Interest.

36.     **"Impaired"** shall mean: With respect to a Claim or Interest, impaired within the meaning of Bankruptcy Code section 1124.

37.     **"Interest"** shall mean: Any equity security as defined in Bankruptcy Code section 101(16) in the Debtor, including membership interests and any option, warrant, or right to acquire such interest.

38.     **"Lien"** shall mean: A charge against or interest in property to secure payment of a debt or performance of an obligation.

39.     **"Petition Date"** shall mean: November 9, 2025.

40.     **"Plan"** shall mean: This Chapter 11 Plan of Reorganization, as it may be amended, modified, or supplemented.

41.     **"Post-Petition Financing"** shall mean: The financing to be obtained by the Debtor after the Effective Date to fund certain payments under the Plan, including the payment to Custom Home Furnishings, LLC, as described in Article V.C.

42.     **"Priority Claim"** shall mean: A Claim entitled to priority under Bankruptcy Code section 507(a), excluding Administrative Claims and Priority Tax Claims.

43.     **"Priority Tax Claim"** shall mean: A Claim of a governmental unit of the kind specified in Bankruptcy Code section 507(a)(8).

44.     **"Professional"** shall mean: Any professional employed in the Case pursuant to Bankruptcy Code sections 327, 328, or 1103.

45.     **"Proof of Claim"** shall mean: A proof of claim filed in accordance with the Bankruptcy Rules.

46.     **"Property"** shall mean: The real property generally located at 2272 Dolphin Shores Drive SW, Supply, NC 28462, consisting of: (i) Phase 1 (14.04± acres) with infrastructure and seven development pads approved for 144 units (B, C, D, E, G, H, I) and Building F (a four-story building with 36 covered parking spaces and residential condominium units); (ii) Phase 2 (6.41± acres) with no improvements; and (iii) a 2.00± acre tract of raw land intended for boat and vehicle storage and community amenities.

47.     **"Pro Rata"** shall mean: In proportion to the Allowed amount of a Claim or Interest in a Class compared to the total Allowed amounts in that Class.

48.     **"Reorganized Debtor"** shall mean: The Debtor as reorganized under the Plan on and after the Effective Date.

49.     **"Schedule"** shall mean: A schedule of assets or liabilities filed by the Debtor pursuant to Bankruptcy Rule 1007.

50.     **"Secured Claim"** shall mean: A Claim secured by a Lien on property in which the Estate has an interest, to the extent of value determined under Bankruptcy Code section 506(a).

51.     **"Unexpired Lease"** shall mean: A lease to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

52.     **"Unimpaired"** shall mean: Not impaired within the meaning of Bankruptcy Code section 1124.

53.     **"Unsecured Claim"** shall mean: A Claim that is not a Secured Claim.

**B. Rules of Construction**. Unless otherwise specified: (i) words in the singular include the plural and vice versa; (ii) "including" means "including, without limitation"; (iii) headings are for convenience only and shall not affect interpretation; and (iv) statutory references are to such statutes as amended from time to time.

## III. CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Bankruptcy Code sections 1122 and 1123(a)(1), Claims and Interests are classified as follows for all purposes, including voting, confirmation, and distribution:

| Class | Claim/Interest | Status | Voting |
|---|---|---|---|
| 1 | Administrative Claims | Unimpaired | Deemed to Accept |
| 2 | Ad Valorem Tax Claims | Unimpaired | Deemed to Accept |
| 3 | Priority Tax Claims | Unimpaired | Deemed to Accept |
| 4 | Custom Home Furnishings Claim | Impaired | Entitled to Vote |

| 5 | FCI Lender Services, Inc. Secured Claims | Impaired | Entitled to Vote |
|---|---|---|---|
| 6 | Builder's Capital Secured Claim | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Entitled to Vote |
| 8 | Equity Interests | Unimpaired | Deemed to Accept |
| | | | |
| 9 | Carlson Brothers, Inc. Claim | Impaired | Entitled to Vote |
| 10 | Dolphin Shores Condominium Association, Inc. Claim | Impaired | Entitled to Vote |

## IV. TREATMENT OF CLAIMS AND INTERESTS

Except as otherwise provided herein, the treatment and consideration provided under the Plan shall be in full satisfaction, settlement, release, extinguishment, and discharge of Claims against and Interests in the Debtor and the Estate.

### A. Class 1 – Administrative Claims

1.      Classification: All Allowed Administrative Claims, including the claim of Cheek Legal, PLLC.

2.      Treatment: Unless a Holder agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall receive Cash equal to the Allowed amount of such claim on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date the claim becomes an Allowed Administrative Claim (or as soon as reasonably practicable thereafter). If funds are not available to pay such Administrative Claims within ten (10) days of the Effective Date of the Plan, then each holder of such a claim that agrees to payment terms, will receive payments pursuant to such agreement.

3.      Voting: Unimpaired; deemed to accept pursuant to Bankruptcy Code section 1126(f).

**B. Class 2 – Ad Valorem Tax Claims**

1.      <u>Classification</u>: The Allowed Secured Claim of the Brunswick County Tax Office for ad valorem taxes in the amount of $30,104.46.

2.      <u>Treatment</u>: The Debtor proposes to pay claims in this class with quarterly payments over a period of five (5) years from the Petition Date. Quarterly payments shall commence on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter, and shall include interest at the applicable rate imposed by the tax collector until paid in full. The Debtor may also satisfy claims in this class in whole or in part through the sale or foreclosure of real property or have a secured creditor pay the taxes in the event real property is sold or surrendered to the secured creditor.

3.      <u>Voting</u>: Unimpaired; deemed to accept pursuant to Bankruptcy Code section 1126(f).

**C. Class 3 – Priority Tax Claims**

1.      <u>Classification</u>: All Allowed Priority Tax Claims. The Debtor is not aware of any Priority Tax Claims as of the Petition Date.

2.      <u>Treatment</u>: Each Holder of an Allowed Priority Tax Claim shall be paid as follows:

- Costs and expenses of administration, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date. The Debtor does not anticipate that any such claims will be filed.
- Unsecured priority tax claims, if any, described in Bankruptcy Code § 507(a)(8) shall be paid in full in quarterly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter, with interest at the statutory rate as of the Effective Date.
- Secured claimants, if any, shall retain their secured interest in the property of the Debtor. The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate from the Effective Date. Debtor shall pay these Claims over a period not to exceed five (5) years from the Petition Date beginning on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter.

- In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue (the "**Department**"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved. The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals). Notwithstanding any other provisions of the Plan and the Confirmation Order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

- Unsecured general tax claims, if any, will be treated as provided below in the section relating to "General Unsecured Claims."

3.      Voting: Unimpaired; deemed to accept pursuant to Bankruptcy Code section 1126(f).

### D. Class 4 – Custom Home Furnishings Claim

1.      Classification: The Allowed Claim of Custom Home Furnishings, LLC.

2.      Treatment: The Debtor shall pay Custom Home Furnishings, LLC: (i) $224,460.57; and (ii) attorneys' fees of $3,962.16. The Debtor shall fund this payment through Post-Petition Financing and the sale of condominium units or Building F as described in Article V.C. Upon any partial or individual sale of real estate, the Debtor shall pay 5% of the net sales proceeds to Custom Home Furnishings, up to $224,460.57 plus attorneys' fees of $3,962.16. Within ten (10) days after the Effective Date, Custom Home Furnishings, LLC shall deliver the furniture to the Debtor.

3.      Voting: Impaired; entitled to vote.

### E. Class 5 – FCI Lender Services, Inc. Secured Claims

1.      Classification: The Allowed Secured Claims of Churchill Funding I, One IM RTL Ltd., and Naikan I SPV, LLC, serviced by FCI Lender Services, Inc., secured by condominium units in Building F as follows:

| Account No. | Principal Balance | Collateral | Deed of Trust Recording Reference |
|---|---|---|---|
| 399551583 | $1,538,130.00 | 2272 Dolphin Shores Drive SW, Unit 2-101-104 | Deed Book 5257 at Page 788 |
| 399551577 | $1,538,130.00 | 2272 Dolphin Shores Drive SW, Unit 3-101-104 | Deed Book 5257 at Page 840 |
| 399551586 | $1,538,130.00 | 2272 Dolphin Shores Drive SW, Unit 4-101-104 | Deed Book 5257 at Page 893 |
| 399551580 | $1,286,190.00 | 2272 Dolphin Shores Drive SW, Unit 4-105-108 | Deed Book 5257 at Page 813 |
| 399551574 | $1,286,190.00 | 2227 Dolphin Shores Drive SW, Unit 3-105-108 | Deed Book 5257 at Page 868 |

2.      Treatment: In full and final satisfaction of the Allowed Secured Claims in this Class, the Debtor shall have five (5) months after the Effective Date to market and sell the real property securing such loans (the "**Class 5 Marketing Period**"). During the Class 5 Marketing Period, the Debtor shall:

- Retain a qualified real estate broker experienced in marketing and selling condominium properties in Brunswick County, North Carolina.
- List the property for sale at a price consistent with recent appraisals indicating an aggregate market value of approximately $10,500,000 for all units.
- Provide monthly written status reports to FCI Lender Services, Inc. regarding marketing efforts and offers received.
- If the properties are not sold as a bundled package during the Class 5 Marketing Period, FCI Lender Services, Inc. shall release portions of the collateral to facilitate individual sales upon payment of a release price of seventy-five per cent (75%) of the net proceeds of any such sale.
- If the properties are not sold within the Class 5 Marketing Period, the Debtor shall conduct an auction sale of the properties within ninety (90) days thereafter. The auction shall be conducted by a qualified auctioneer experienced with similar properties, and sales shall be subject to a reasonable reserve price to be agreed upon by the Debtor and FCI Lender Services, Inc.

3.      Voting: Impaired; entitled to vote.

### F. Class 6 – Builder's Capital Secured Claim

1.  Classification: The Allowed Secured Claim of Builder's Capital, secured by Phase 1 (14.04± acres), Phase 2 (6.41± acres), and a 2.00± acre tract of raw land pursuant to a deed of trust recorded in Deed Book 4818 at Page 1267 of the Brunswick County Public Registry. The loan is serviced by Construction Loan Services, II, and arises from a promissory note dated March 22, 2022 in the original principal amount of $36,039,438.81, with a current balance of $14,253,621.33.

2.  Treatment: In full and final satisfaction of the Allowed Secured Claim of Builder's Capital, the Debtor shall have five (5) months after the Effective Date to market and sell the real property securing the Builder's Capital loan (the "**Class 6 Marketing Period**"). During the Class 6 Marketing Period, the Debtor shall:

- Retain a qualified real estate broker experienced in marketing and selling development properties in Brunswick County, North Carolina.
- List the properties for sale at prices consistent with recent appraisals indicating an aggregate market value of approximately $18,000,000 for the properties.
- Provide monthly written status reports to Builder's Capital regarding marketing efforts and offers received.
- If the properties are not sold as a bundled package during the Class 6 Marketing Period, Builder's Capital shall release portions of the collateral to facilitate individual sales upon payment of the release price of seventy-five per cent (75%) of the net proceeds of any such sale.
- If the properties are not sold within the Class 6 Marketing Period, the Debtor shall conduct an auction sale within ninety (90) days thereafter. The auction shall be conducted by a qualified auctioneer experienced with similar properties, and sales shall be subject to a reasonable reserve price to be agreed upon by the Debtor and Builder's Capital.

3.  Voting: Impaired; entitled to vote.

### G. Class 7 – General Unsecured Claims

1.  Classification: All Allowed General Unsecured Claims.

2.  Treatment: Unless a Holder agrees to less favorable treatment, each Holder shall receive its Pro Rata share of net proceeds from sales of the Debtor's assets remaining after payment (or satisfaction) of all Allowed Administrative Claims, Priority Tax Claims, and Secured Claims.

Distributions shall be made as soon as reasonably practicable after the Effective Date, but in no event later than thirty (30) days after completion of all asset sales contemplated by the Plan.

3.        Voting: Impaired; entitled to vote.

## H. Class 8 – Equity Interests

1.        Classification: All Allowed Equity Interests in the Debtor, held by Jeffrey Stokley Sr. and Jeffrey Stokley, Jr.

2.        Treatment: Holders shall retain their membership interests in the Reorganized Debtor; provided, however, that no distributions shall be made on account of Equity Interests until all Allowed Claims in Classes 1 through 7, 9 & 10 are paid in full or otherwise satisfied in accordance with the Plan.

3.        Voting: Unimpaired; deemed to accept pursuant to Bankruptcy Code section 1126(f).

## I. Class 9 – Carlson Brothers, Inc.

1.        Classification:  Class 9 consists of the Claim asserted by Carlson Brothers, Inc. ("**Carlson**") in its Proof of Claim filed in this Case in the amount of $650,571.03 (Proof of Claim No. 3). Carlson asserts that its Claim is secured by a claim of lien on real property and a notice of lis pendens. Carlson's Claim of Lien on Real Property was filed in Brunswick County, North Carolina on June 14, 2024, and identifies the improved property by street address and parcel identifiers. Carlson filed a Notice of Lis Pendens in Brunswick County referencing the lien enforcement action.  Carlson also alleges that a bond to discharge lien was filed on October 2, 2024, listing Phoenix Captive Solutions, LLC as surety and stating a bond amount equal to one and one-fourth times the lien amount. The Plan treatment below is intended to address the parties' August 29, 2025 stipulation in the New Hanover County action, which stipulates a cash bond amount of $607,123.68 and contemplates a cash deposit with the Brunswick County Clerk of Court pursuant to N.C. Gen. Stat. § 44A-16.

The Debtor disputes the validity, amount, and secured status of the Carlson Claim, and nothing in the Plan or this Amendment shall constitute an allowance of the Carlson Claim except to the extent (if any) allowed by Final Order.  The Debtor expressly reserves all rights, claims, defenses, setoff, and recoupment rights with respect to the Carlson Claim, including the right to object to the Carlson Claim and to seek estimation of any portion of the Carlson Claim pursuant to Bankruptcy Code section 502(c).

2.      Treatment: As a means of implementing the Plan and to facilitate administration and disposition of the Property, the Debtor shall be authorized (but not required) to deposit with the Clerk of Superior Court for Brunswick County, North Carolina, a sum equal to $607,123.68 (the "**Carlson Cash Bond Amount**") consistent with the parties' stipulation, to be applied to the payment finally determined to be due, if any, on account of the Carlson Claim. To the extent the Debtor makes the cash deposit described above, the Debtor's intent under the Plan is that such cash deposit be in lieu of, and not in addition to, the surety bond referenced in the stipulation and related pleadings. The Plan contemplates that the Debtor may seek, and Carlson may seek, appropriate relief from the automatic stay to permit liquidation of the Carlson Claim in the pending state-court action identified in Carlson's claim documentation, with any resulting judgment to be administered in this Case consistent with the Plan.

3.      Voting: Impaired; entitled to vote.  This claim is impaired because the Carlson Claim is Disputed and the Plan provides for conditional, contingent treatment pending allowance and final adjudication rather than payment in full in Cash on the Effective Date.

### J.  Class 10 – Dolphin Shores Building F Condominium Association, Inc.

1.      Classification: Any Claim asserted by Dolphin Shores Building F Condominium Association, Inc. (the "**Association**") relating to the turnover and/or conveyance of common areas and amenities associated with the condominium regime and related facilities, and any monetary Claim (if any) arising from the same. Prior to the filing of the case, the Debtor and the Association were in negotiations regarding a clubhouse building & pool lease agreement, concerning non-exclusive use of the clubhouse, pool, parking area, pier, dock, and gazebo, and allocating responsibility for utilities, pool service, cleaning, landscaping, pest control, elevator service (minor repairs capped), fire/sprinkler/security monitoring, liability insurance, inspections/permitting, and minor repairs for the pier/dock/gazebo.

2.      Treatment: Within ten (10) days after the Effective Date, the Debtor shall take commercially reasonable steps to turn over and/or convey the common areas to the Association to upon reaching a mutually agreeable arrangement for the same.  Upon such agreement, the Debtor shall execute such documents as are reasonably necessary to effectuate such turnover/conveyance. No turnover/conveyance shall be carried out without a mutually agreeable agreement between the Debtor and the Association.  Any dispute regarding the scope, form, or sufficiency of the turnover/conveyance shall be a controversy or dispute arising under or in connection with the plan subject to the Bankruptcy Court's retained jurisdiction as provided in the Plan.

3.      Voting: Impaired; entitled to vote. This class is impaired because the Plan provides for post-Effective Date performance obligations and does not provide for payment in full in Cash on the Effective Date of any monetary component that may be asserted and allowed.

## IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The Debtor hereby assumes all leases in which the Debtor are the Lessors and all shareholder agreements and operating agreements related to entities owned by the Debtor, if any.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.      This Plan contemplates a reorganization of debts and continuation of the Debtor's business. In accordance with the Plan, the Debtor intends to satisfy certain creditor claims from income earned through continued operation and may also satisfy claims from the sale of real property.  With respect to each claim described above in Article III, except as otherwise expressly provided in Article III, the Debtor shall keep the collateral insured pursuant to the terms of the/each security instrument (i.e., the deed of trust, mortgage, security agreement or other applicable security instrument) (herein called the "Security Instrument," whether one or more) which secures the debt. If the Debtor fails to make a payment as provided herein within thirty (30) days after its due date or fails to keep the collateral insured as provided herein within thirty (30) days after written notice from the secured creditor of such failure, the secured creditor may declare the debt in default, give notice thereof to the Debtor, and exercise its remedies against the collateral that secures the debt. The provisions of the Security Instrument that allow the secured creditor to foreclose on the collateral in the event of a default and all other provisions of the Security Instrument that relate to the collateral shall remain in effect. Any financial covenants or other covenants in any of the loan documents relating to the debt, including but not limited to the Security Instrument, that do not relate to the preservation, protection, repossession or foreclosure of the collateral shall not be effective post-confirmation.

B.      <u>Sale Free and Clear of Liens</u>.  Any real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court

will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

C.      Distribution of Sales Proceeds.  Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code.  In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata.  The Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

D.      Preservation of Right to Credit Bid.  All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser.  In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, the Debtor shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtor's deadline for accepting such contract to inform the Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser.  In the event the creditor does not provide written notification to the Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid.  Each secured creditor shall be responsible for providing the Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

E.      Deficiency Claims.  Each secured creditor who is entitled to foreclose on its collateral under the terms of the Plan shall have 120 days after the Effective Date to complete the foreclosure of its collateral.  Each such creditor shall have 150 days following the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the unsecured creditor class.  In the event the Debtor obtain its Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information required in a proof of claim.

F.     <u>De Minimis Distributions</u>.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

G.     <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.  If a distribution check is not negotiated by the creditor within ninety (90) days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, the Debtor will be entitled to void said check and retain said funds to be used in the Debtor's discretion.  Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

H.     <u>Preservation of Avoided Transactions for the Benefit of the Estate</u>.  All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law.  Funds received from such transactions shall be distributed to creditors according to the priorities of the Code.  In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.  However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

I.     <u>Timing of Distributions</u>. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.   Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.  The Debtor reserves the right to pay any Claim on an earlier or expedited schedule.

J.     All payments or distributions made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal.  In the event that a creditor claims that it is entitled to costs and/or attorneys fees, such creditor must file a fee application with the Court and such costs and attorneys fees must be approved by the Court prior to such costs and attorneys fees becoming part of the creditor's allowed claim.

K.      The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

L.      <u>Revocation of Plan.</u>  The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of the Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

M.      The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

N.      Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

O.      Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

P.      Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

Q.      All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that the Debtor

retain the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

R.      Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

S.      Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

T.      Procedure for Payment of Professional Fees.  Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

U.      Escrow Arrangements.        Unless otherwise stated in individual creditor treatments herein, the Debtor will no longer make any escrow payments for taxes, insurance, or any other expenses generally paid through escrowed funds.  The Debtor will pay such expenses directly from and after the Effective Date.  Escrowed funds held by a creditor shall be turned over to the Debtor on the Effective Date.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

A. Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not

intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement. Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, but is not limited to all pre-petition Claims and any and all post-petition Claims that he could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or Claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

    B. Preservation of Avoided Transactions for the Benefit of the Estate. All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code after payment of any and all litigation costs, fees, and expenses incurred in litigating or collecting on such recoveries and shall be treated as a Class 1 Claim. In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property. However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

    C. Funds recovered as a result of such actions shall be applied first in reimbursement of any attorneys' fees and costs of such actions, and then the remainder shall be the property of the Debtor.

    D. Non-core causes of action presently pending in state and/or federal court in which the Debtor is the plaintiff may continue to be pursued in the Debtor's sole discretion.

## VIII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## IX.  PROVISIONS GOVERNING DISTRIBUTIONS

A.  **Delivery of Distributions in General**.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.  **Distribution Dates**.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.  **Cure Period**.  The failure by the Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until the Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the thirty (30) day cure period, the Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## X.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.  Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.  Acceptance by a Class of Creditors.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount

and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

      C.    <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

- Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules; or
- Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018.

If an impaired Claim has been filed in an undetermined amount, in which case the creditor holding such claim shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any creditor holding two or more duplicate claims shall be entitled to vote only one claim.

      D.    <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

      E.    <u>Acceptances Necessary to Confirm the Plan</u>.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor's assets were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

      F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable,

to such impaired class.  In the event that any class votes against the plan, the Debtor hereby requests and move the Court under the provisions of this Plan entitled "cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XI.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII.  EFFECT OF CONFIRMATION

A.      Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.      **INJUNCTION**.  **As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, Debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtor may have against any party in interest.  This injunction shall not affect any creditor's ability to enforce rights against persons other than the Debtor and property not owned by the Debtor.**

**The confirmation of the Plan shall operate to enjoin any action against a guarantor or co-obligor of any claim settled or satisfied under the terms of the Plan during the term of the Plan.**

C.      Confirmation of the Plan shall satisfy all claims or causes of action arising out of any claim settled under the terms of the Plan.

D.      Waiver and Release. Confirmation shall constitute waiver and release of the right to pursue litigation and causes of action against the Debtor, which release is supported by the requirements of this Plan and covenants contained herein.

E.      Binding Effect. Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or interests including any Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

F.      Discharge of Claims. Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.

## XIII.  RELEASE OF TITLE TO PROPERTY

Real Property.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.  The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case.  The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided

for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XIV.  APPLICATION OF PLAN PAYMENTS

A.      All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor.  In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.      Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XV.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.      to determine any and all objections to the allowance of claims and/or interests;

2.      to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.      to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.      to determine all controversies and disputes arising under or in connection with the Plan;

5. to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6. to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7. to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8. to determine all disputes regarding property of the Estate;

9. to establish and adjust procedures for the orderly administration of the Estate;

10. to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

11. to replace the Debtor-in-possession with a Trustee for good cause shown.

12. to determine and resolve questions concerning the existence of defaults under the Plan;

13. to modify the Plan pursuant to 11 U.S.C. § 1127(b);

14. to correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to carry out the purposes and intent of the Plan; and

15. to issue any order necessary to carry out the Plan.

## XVI.  MISCELLANEOUS PROVISIONS

A. **Survival of Terms**.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B. **Successors Bound**.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.      **Controlling Law**.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.      **Further Assurance**.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.      **Liens**.  Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.      **Incorporation of Disclosure**.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

G.      **Credit Reporting**.   Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that the Debtor has filed bankruptcy and included all obligations owed to that Creditor in its Plan.  Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming the Debtor's Plan.  Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but pre-confirmation.  Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the alleged violations.  The Debtor shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a Creditor for erroneous credit reporting and the Bankruptcy Court shall retain jurisdiction to hear such matters.

H.      **Adversary Proceedings**.  The Debtor reserves the right to begin or continue any adversary proceedings permitted under Title 11, United States Code, and the applicable Bankruptcy Rules.

I.      **Modification of Plan**.  The Debtor may submit modifications of the Plan to the Court at any time prior to confirmation pursuant to § 1127.

J.      **Default Remedies**.   Any creditor may serve notice of a default on the Debtor and Debtor's counsel.  Such notices shall be in writing and delivered by registered mail to the Debtor.

The Debtor shall have thirty (30) days to cure the default.  If the default is not cured, any creditor may take such action as the Code permits.  This provision shall be cumulative with other rights and remedies provided to parties in interest under the Bankruptcy Code.

K.      **Granting of Liens**.  If an existing lien on any property of the Debtor contains language providing that the granting of a lien on that property shall be deemed an event of default, the granting of a lien in accordance with this Plan shall not be deemed an event of default.

L.      **Cancellation of Liens**.  Except as otherwise provided specifically in this Plan, any and all prepetition liens encumbering any of the Debtor's assets, whether deeds of trust, UCC-1 financing statements, or otherwise, shall be deemed canceled of record upon the entry of the Confirmation Order.  The Debtor shall be entitled to present this Plan, and the Confirmation Order to any public official charged with the maintenance of records regarding liens, and direct said official to cancel said liens of record.

## XVII. FINANCIAL PROJECTIONS AND FEASIBILITY

**A. Key Assumptions**

1.      Building F and Condominium Units: Total market value is approximately $10,500,000; estimated time to sell is five (5) months; estimated net proceeds are $9,975,000, after commissions; allocation of proceeds to pay Class 5 secured claims ($9,975,000) with any excess to other creditors in accordance with the Plan.  The financial projections and feasibility analysis incorporate (i) the potential deposit of the Carlson Cash Bond Amount, and (ii) the timing of the Association turnover/conveyance obligation.

2.      Development Pads and Raw Land: Total market value is approximately $18,000,000; estimated time to sell is five (5) months; estimated net proceeds are $17,100,000; allocation of proceeds to pay Builder's Capital secured claim ($14,253,621.33) with any excess to other creditors in accordance with the Plan.

3.      Post-Petition Financing: Amount $500,000; interest rate Prime + 3% (estimated at 8%); term 18 months; estimated monthly payment approximately $30,000; repayment source is proceeds from property sales.

**B. Feasibility**

Based on the projections and assumptions above, including appraised values, market analysis, financing availability, marketing strategy, and contingency planning, the Debtor believes the Plan is feasible and satisfies Bankruptcy Code section 1129(a)(11).

## XVIII. CONCLUSION

The Debtor believes that the Plan is in the best interests of creditors and equity holders and provides the highest and best recovery for all Classes. Accordingly, the Debtor respectfully requests confirmation of the Plan and recommends that all voting creditors vote to accept the Plan.

Respectfully submitted, this the 11th day of March, 2026.

**CHEEK LEGAL, PLLC**

By: /s/ Clayton W. Cheek
  Clayton W. Cheek
  N.C. State Bar No.: 30590
  Email: clayton@cheeklegal.com
  Cheek Legal, PLLC
  310 Craven Street, Suite 12
  New Bern, NC 28560
  Direct: (252) 210-4321
  Office: (252) 210-4311
  *Attorney for the Debtor*

**DOLPHIN SHORES INVESTMENTS, LLC**

By: /s/ Jeffrey Stokley, Sr.
  Jeffrey Stokley Sr., Manager