UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 25-04467-5-DMW |
| Dolphin Shores Investments, LLC, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | Chapter 11 |
| | ) | |

**OBJECTION TO AMENDED DISCLOSURE STATEMENT IN SUPPORT OF
CHAPTER 11 PLAN AND REQUEST FOR HEARING**

NOW COMES Tryon Street Acquisition Trust I ("Tryon"), OneIM RTL Ltd. ("OneIM"), and Athene Annuity and Life Co. ("Athene") (together with Tryon and OneIM, "Creditors"), by and through counsel, and objects to Debtor Dolphin Shores Investments, LLC's ("Dolphin Shores") Amended Disclosure Statement in Support of Chapter 11 Plan of Reorganization of Dolphin Shores Investments, LLC (Doc. No. 69). In support of their Objection, Creditors state as follows:

**JURISDICTION AND VENUE**

1.      Dolphin Shores filed its Petition under Chapter 11 of the Bankruptcy Code on November 9, 2025 (the "Petition Date"). (Doc. No. 1).

2.      Dolphin Shores continues to operate and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      The Court has jurisdiction over this Objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b), *et seq*. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

67780356 v1

## FACTUAL BACKGROUND

4.      On March 11, 2026, Dolphin Shores filed its Disclosure Statement in Support of Chapter 11 Plan of Reorganization of Dolphin Shores Investments, LLC (the "Disclosure Statement"). (Doc. No. 41).

5.      On October 25, 2024, Dolphin Shores entered into a series of agreements with Tryon, OneIM, and Athene as follows:

| Loan No. | Creditor | Documents Evidencing Claim | Property Encumbered ("Subject Property") | Claim No. |
|---|---|---|---|---|
| 399551583 | Tryon | Secured Note<br><br>Loan and Security Agreement<br><br>Deed of Trust, Assignment of Leases and Rents<br><br>Assignment of Security Interests | 2272 Dolphin Shores Drive SW, Unit 2-101, Supply, North Carolina 28462<br><br>2272 Dolphin Shores Drive SW, Unit 2-102, Supply, North Carolina 28462<br><br>2272 Dolphin Shores Drive SW, Unit 2-103, Supply, North Carolina 28462<br><br>2272 Dolphin Shores Drive SW, Unit 2-104, Supply, North Carolina 28462 | Claim No. 6-1 |
| 399551580 | OneIM | Secured Note<br><br>Loan and Security Agreement<br><br>Deed of Trust, Assignment of Leases and Rents<br><br>Assignment of Security Interests | 2272 Dolphin Shores Drive SW, Unit 2-105, Supply, North Carolina 28462<br><br>2272 Dolphin Shores Drive SW, Unit 2-106, Supply, North Carolina 28462<br><br>2272 Dolphin Shores Drive SW, Unit 2-107, Supply, North Carolina 28462<br><br>2272 Dolphin Shores Drive SW, Unit 2-108, Supply, North Carolina 28462 | Claim No. 7-1 |
| 399551589 | Athene | Secured Note<br><br>Loan and Security Agreement<br><br>Deed of Trust, Assignment of Leases and Rents | 2272 Dolphin Shores Drive SW, Unit 4-105, Supply, North Carolina 28462<br><br>2272 Dolphin Shores Drive SW, Unit 4-106, Supply, North Carolina 28462<br>2272 Dolphin Shores Drive SW, Unit 4-107, Supply, North Carolina 28462 | Claim No. 8-1 |

2

67780356 v1

| | | | | |
|---|---|---|---|---|
| | | Assignment of Security Interests | 2272 Dolphin Shores Drive SW, Unit 4-108, Supply, North Carolina 28462 | |
| 399551577 | OneIM | Secured Note | 2272 Dolphin Shores Drive SW, Unit 3-101, Supply, North Carolina 28462 | Claim No. 9-1 |
| | | Loan and Security Agreement | 2272 Dolphin Shores Drive SW, Unit 3-102, Supply, North Carolina 28462 | |
| | | Deed of Trust, Assignment of Leases and Rents | 2272 Dolphin Shores Drive SW, Unit 3-103, Supply, North Carolina 28462 | |
| | | Assignment of Security Interests | 2272 Dolphin Shores Drive SW, Unit 3-104, Supply, North Carolina 28462 | |

Creditors expressly incorporate by reference the above-described loans and loan documents, and respective Claims (including exhibits and addenda) with this Court's Claims Register.

6. As security for the foregoing obligations, Dolphin Shores granted to Churchill Funding I LLC ("Churchill")[1] a security interest in the Subject Property. *See* Claim Nos. 6-1, 7-1, 8-1, and 9-1 (recorded copies of the respective Deeds of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement).

---

[1] Churchill subsequently assigned its interest in the Loans to Tryon, OneIM, and Athene, respectively.

3

7.     Accordingly, Creditors are secured creditors in this proceeding with an interest in cash collateral. In fact, Creditors are the primary creditors in this case with their claims dwarfing the few other claims scheduled in this case. Creditors thus have an interest in Dolphin Shores' post-Petition cash collateral and pre-Petition rents.

8.     Dolphin Shores failed to make timely payments when due under the foregoing loans. As of the Petition Date, Dolphin Shores was in arrears on the foregoing loans in the following amounts:

| Loan No. | Amount to Cure Default as of Petition Date |
|---|---|
| 399551583 | $147,764.10 |
| 399551580 | $123,814.26 |
| 399551589 | $123,814.26 |
| 399551577 | $147,764.10 |

*See* Claim No. 6-1, p. 2; Claim No. 7-1, p. 2; Claim No. 8-1, p. 2; Claim No. 9-1, p. 2.

9.     As of the Petition Date, Dolphin Shores owed the following amounts to Creditors:

| Loan No. | Amount of Claim as of Petition Date |
|---|---|
| 399551583 | $1,685,894.10 |
| 399551580 | $1,410,004.26 |
| 399551589 | $1,410,004.26 |
| 399551577 | $1,685,894.10 |

10.     Creditors have not received payment on any of the foregoing loans since long before the Petition Date.

11.     Each of the Secured Notes identified above matured on February 1, 2026. *See* (Claim 6-1, Part 3, p. 2; Claim 7-1, Part 3, p. 2; Claim 8-1, Part 3, p. 2; Claim 9-1, Part 3, p. 2).

12.     Dolphin Shores filed the Disclosure Statement (Doc. No. 41) on March 11, 2026, and subsequently filed its Amended Disclosure Statement on April 14, 2026 (Doc. No. 69). The Amended Disclosure Statement purports to "provide each holder of a Claim against the Debtor with adequate information about the Debtor and the Debtor's Plan of Reorganization so that each

4

holder of a claim may make an informed decision about whether to accept or reject the Plan." *Id.* at 1.

13.     Class 4 of the Claims and Interests contained in the Plan constitutes a claim by Custom Home Furnishings, LLC in the amount of $224,460.57, along with attorneys' fees of $3,962.16. (Doc. No. 40, § IV(D)).

14.     The Disclosure Statement reiterates that Class 4 Claims shall be paid through "Post-Petition Financing" and the sale of condominium units, and upon whole or partial sale of real estate, Dolphin Shores will pay 5 percent of the net sale proceeds towards this class of claims. (Doc. No. 69, p. 4).

15.     Creditors' treatment is found in Class 5, and their claims are to be paid in full and final satisfaction of their Allowed Secured Claims. (Doc. No. 40, § IV(E)). That treatment includes a five-month marketing period to sell the real property, including Building F, and if the properties are not sold as part of a bundled package during that five-month period, then portions, or individual units, shall be released, with Creditors receiving 75 percent of the net proceeds of sale. *Id.* But the Plan then goes on to say that if the properties are not sold within the 5-month marketing period, then Dolphin Shores shall conduct an auction with sales "subject to a reasonable reserve price to be agreed upon by the Debtor and FCI Lender Services, Inc."[2] *Id.* There is no period set forth during which Dolphin Shores may attempt to sell individual units contained within Building F. *Id.*

## OBJECTIONS & RELIEF REQUESTED

16.     FED. R. BANKR. P. 3016(b) requires a debtor to file a disclosure statement alongside its plan, or within some other time as fixed by the Court.  Such a disclosure statement should contain "adequate information" about a debtor, which 11 U.S.C. § 1125(a)(1) generally defines as

---

[2] FCI Lender Services, Inc. is the servicer on the loans described herein.

67780356 v1

"information of a kind, and *in sufficient detail*, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records. . .." (emphasis added).  The disclosure statement should provide the "hypothetical investor typical of the holders of claims or interests in the case" adequate information that would allow them to make an informed judgment about the plan.  *See generally id*.

17.     One bankruptcy court has noted that courts consider several factors in determining whether a disclosure statement provides adequate information, including:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

*In re Coastal Realty Invs., Inc.*, No. 12-20564, 2013 WL 214235, at *5 (Bankr. S.D. Ga. Jan. 17, 2013); *see also In re Copy Crafters Quickprint, Inc*., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988) (noting that without a "recent valuation of the property by a qualified individual . . . the Court is reluctant to approve a Disclosure Statement premised on an unsupported and self-serving valuation").

18.     Creditors object to the Disclosure Statement for multiple reasons.  Creditors and other creditors are entitled to adequate information to make an informed decision about the Plan,

6

especially when the alternative to confirmation of a plan is conversion to Chapter 7, where the creditors could work with a Chapter 7 Trustee towards an orderly, yet efficient, sale of certain assets, and/or to begin/continue litigation outside of the bankruptcy arena.

19.     Dolphin Shores has provided certain financial projections; however, it has not provided sufficient evidence that it can make the payments it proposes. For example, there is insufficient detail as to the "recent appraisals indicating an aggregate market value of approximately $10,500,000 for all units" of Building F. (Doc. No. 40, § IV(E)).[3] Indeed, Dolphin Shores seems to recognize that the success of this reorganization depends heavily, if not exclusively, on the sale of real estate, specifically Building F. *See* (Doc. No. 69, Ex. A) (identifying $27,075,000.00 in real estate assets, and no other assets). Without sufficient evidence of a reasonable expectation of the current value of the real estate that is going to drive this bankruptcy proceeding, the Court and Creditors are left speculating as to the realistic, current value of the property.[4] Such valuation at this point is speculative at best.

20.     The Amended Disclosure Statement suggests that it is a liquidating plan focused on the marketing and sale of real property, and states that "[p]rojections are not included . . . because this is a liquidating plan." (Doc. No. 69, p. 1). But that's inconsistent with what's in the Amended Disclosure Statement and even the Plan itself. (*Id.* at 1) ("Chapter 11 Plan of Reorganization"); *see also* (Doc. No. 40, p. 1) (noting that it is a plan of reorganization). Thus, unless there is an amended plan forthcoming, there is a serious question as to what type of plan this is, and in any

---

[3] Dolphin Shores suggests that Creditors show a combined value of $11,675,520.00 for the condominium units in Building F. (Doc. No. 69, p. 6). While the proofs of claim speak for themselves, Creditors submit that there really must be a new appraisal on the property to determine a realistic valuation – and not reliance on pre-bankruptcy valuations or rough estimates of value as of the Petition Date.

[4] Creditors recognize that there is a pending Application for Approval of Employment of Cape Fear Real Estate Group, LLC to appraise Building F. (Doc. No. 47). This Application, if approved, may shed some additional light into the proper valuation of the real estate assets Dolphin Shores holds, though it does not resolve all of Creditors' objections to the Disclosure Statement. At most, the Court should defer consideration of the Disclosure Statement until after an appraisal is obtained and incorporated into an amended disclosure statement.

67780356 v1

event, the Amended Disclosure Statement fails to provide Creditors with a real opportunity to evaluate the Debtor's proposed operations, feasibility, and implementation of the plan as required under 11 U.S.C. § 1125.

21.     Additionally, the Plan and Disclosure Statement purport that "[u]pon the sale of any real or personal property to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale . . . and shall be paid to lienholders in accordance with the priorities of such liens." (Doc. No. 40, § 5(C)). The Plan and Disclosure Statement, however, suggest that Class 4 claims may be paid out of sales proceeds of real property that should go to Creditors as senior, secured lienholders. *Compare* (Doc. No. 69, p. 4) *with* (Claim No. 5-1, Addendum, Exs. A and B) (obtaining default judgment against Dolphin Shores, but without any lien or other security rights that would displace those of Creditors).

22.     As the Plan is currently drafted, there is a world in which Class 4 claims get paid prior to Class 5 claims. Said differently – the full lien held by Creditors on the Subject Property may not attach to the entirety of the sale proceeds in the event of a sale under 11 U.S.C. § 363. Creditors submit that this would deprive them of the benefit of the bargain into which they entered with Dolphin Shores, and is inconsistent with 11 U.S.C. § 1129(b)(A)(ii).

23.     Nor do either the Plan or the Disclosure Statement further explain when, or how, Dolphin Shores intends to discuss or evaluate the "reasonable reserve price" to be agreed upon.

24.     Moreover, the Amended Disclosure Statement contemplates an auction if Building F is not sold within the five-month marketing period. (Doc. No. 69, p. 3-5). The Amended Disclosure statement is silent, however, as to which party may be responsible for closing costs, any carve-out provisions, or real estate commissions. Nor does the Amended Disclosure Statement address (other than a two-stage marketing process) the detailed logistics of the marketing and

8

auction process, including how the parties will reach agreement on reserve prices, how long individual condominium sales may be marketed or sold, or how there may be partial releases of collateral. Thus, the Amended Disclosure Statement leaves serious doubt as to what the marketing and sales process will look like, especially with respect to any proposed auction (and to which Creditors would object).

25.     Finally, the Plan purports that "the Debtor shall be authorized (but not required) to deposit with the Clerk of Superior Court for Brunswick County, North Carolina, a sum equal to $607,123.69" to bond off the disputed lien between Dolphin Shores and Carlson Brothers, Inc. ("Carlson Brothers") (Doc. No. 40, § IV(I)(2)). Unfortunately, the dispute between Dolphin Shores and Carlson Brothers, in Case No. 24CVS004193-640 (New Hanover County, North Carolina) is what led to the present bankruptcy action. But in any event, the Plan appears silent as to where or how Dolphin Shores may come up with cash bond, or the source of those funds. *See id.*; *see also* (Doc. No. 69, p. 5).

26.     Moreover, there is inherent uncertainty as to whether Carlson Brothers or Creditors may have lien priority with respect to the Subject Property. Creditors are named parties in the state court action precisely because their lien rights may be subject to those of Carlson Brothers, if that litigation is successful. But the Plan only states that "Debtor may seek, and Carlson may seek, appropriate relief from the automatic stay to permit liquidation of the Carlson Claim in the pending state-court action . . . with any resulting judgment to be administered in this Case consistent with the Plan." (Doc. No. 40, § IV(I)(2)).

27.     It is true that a debtor's plan need not guarantee success, but it must provide the creditor body with information that suggests "a reasonable assurance of commercial viability." *See In re Mayslake Vill.-Plainfield Campus, Inc.,* 441 B.R. 309, 317 (Bankr. N.D. Ill. 2010). The

9

67780356 v1

Disclosure Statement and Plan do not provide such assurances. The Debtor also proposes conjectural ideas about refinancing, but does not identify potential sources or any other specifics as to what that financing may look like, including who the lender would be, any term sheet, or whether any additional liens would be granted. S*ee* (Doc. No. 40, § IV(D)); (Doc. No. 69, pp. 4, 6, 14). Without additional information, Creditors assert that the Plan may not be feasible and the Disclosure Statement is inadequate, and as such, the Disclosure Statement should not be approved.

## CONCLUSION & RESERVATION OF RIGHTS

28.    Creditors request that approval of the Amended Disclosure Statement, as-is, be denied.  Creditors reserve all rights and remedies, and nothing herein should be considered a waiver of any kind.  Creditors reserve the right to file additional pleadings, including renewed or supplemental objections in this case.

**WHEREFORE**, Creditors respectfully request that the Court sustain this Objection for the reasons set forth herein and based on arguments to be made at a hearing thereon.  Creditors request any additional or different relief that the Court deems in the interests of equity.

Respectfully submitted, the 15th day of May, 2026.

*/s/ G. Wade Leach, III*_____
G. Wade Leach, III, (N.C. State Bar No. 54895)
Burr & Forman LLP
101 South Tryon Street, Suite 2610
Charlotte, NC 28280
(704) 347-1170
Email: wleach@burr.com
ATTORNEYS FOR CREDITORS TRYON STREET
ACQUISITION TRUST I, ONEIM RTL LTD., AND
ATHENE ANNUITY AND LIFE CO.

10

67780356 v1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 15, 2026, he served via the Court's CM/ECF service the foregoing document on the following:

Clayton W. Cheek
*Counsel for Debtor Dolphin Shores Investments, LLC*

Thomas C. Wolff
Zachary Dobbin
*Counsel for Carlson Bros., Inc.*

Bankruptcy Administrator

And by U.S. Mail on the following on May 15, 2026:

GSMS Loan Trust
c/o Selene Finance LP
Attn: BK Dept.
3501 Olympus Blvd., Suite 500
Dallas, TX 75019

Dolphin Shores Investments, LLC
c/o Jeffrey Stokley, Sr., its Manager
5208 Carolina Beach Road
Wilmington, NC 28412

*/s/ G. Wade Leach, III*
G. Wade Leach, III (NC Bar No. 54895)

67780356 v1